ALBERT WHITSON v. LEONARD AMES and Others.[1]

April 23, 1897.

Nos. 10,489—(82).

**Fire Set by Negligence—Question for Jury.**

Evidence in an action for the recovery of damages on account of fire alleged to have been negligently set by the defendants considered, and *held,* that it was sufficient to require the trial court to submit to the jury the question whether the person who set the fire was the servant of his co-defendants, or an independent contractor.

Appeal by plaintiff from an order of the district court for Otter Tail county, Searle, J., denying a motion for a new trial. Reversed.

*Houpt & Baxter* and *Hans Bugge*, for appellant.

*E. E. Corliss*, for respondents.

START, C. J. This is an action for the recovery of the value of a quantity of hay owned by the plaintiff, and destroyed by fire, which was negligently set, as plaintiff alleges, by the defendants. The defendants answered separately, denying the allegations of the complaint. At the close of the evidence the trial court dismissed the action as to the defendants Fred French and Ames & French. The plaintiff appealed from an order denying his motion for a new trial.

The evidence on the trial was undisputed that on October 10, 1895, the defendants Ames & French were the owners of a farm in the town of Carlisle, of which the defendant Fred French was then in charge, and had the general mangement for them; that the defendant

[1] Reported in 70 N. W. 793.

James Crosby was then plowing on the farm under a contract with Ames & French made by their manager, Fred French; that Crosby started a fire on the farm for the purpose of burning the stubble thereon; and that the plaintiff's hay was destroyed by fire on the same day that a fire was started on the defendant's farm. The evidence also tended to show that Crosby negligently set the fire, which spread rapidly, and that it was the same fire that destroyed the plaintiff's hay. The evidence on these points was sufficient to take the case to the jury. If, therefore, the evidence as to the relation of Crosby to his co-defendants Ames & French shows, as a matter of law, that the former was an independent contractor, and not so far their servant as to bring the case within the doctrine of respondeat superior, the trial court rightly dismissed the action as to them; otherwise not.

The evidence on this question may be summarized as follows: The defendant Crosby testified:

I was plowing by the acre on the Ames & French farm on October 10, 1895. I was at work on the south side of the railway track, and during the forenoon Mr. Fred French directed me to go to another field on the north side of the track, and plow around it. That plowing was done for the purpose of making a fire-break. I burned the stubble on that tract in the forenoon of October 10 last. The fire was started along about noon, I think. I know Mr. Ferguson, the elevator man at French. I do not recollect of stating to Mr. Ferguson that Fred French requested me to set that fire. I do not think that I ever told Mr. Ferguson that Fred French directed me to set the fire. I had no authority or direction from any of the defendants to set the fire. Mr. French requested me to go and plow a fire-break around that land. He did not tell me he wanted to burn the stubble. I believe he said something about burning it some time. He did not tell me just when to burn it, and he did not tell me to burn it at all. He might possibly have told me the stubble was to be burned off that field. That is what I plowed the fire-break for. He told me to plow a good and sufficient fire-break around the field. I possibly may have told him that I did not have any matches. I think he said I need not bother about burning it then; that when he was ready he would take another man to help him burn it. The field I plowed around was the one I afterwards plowed. I burned this stubble, and then went back and finished the plowing south of the track.

Edward Ferguson, the person referred to by Crosby in his evidence, testified that the latter did tell him that Fred French directed

him (Crosby) to start the fire in question. Herman Kuhlman testified that on the morning of the fire he heard Fred French tell Mr. Everts that he was going to get Crosby, across the track, to plow two or three rounds and then burn the stubble; that, after this talk, French went south across the track, and got Crosby, who plowed a fire-break around the field where the fire was set. Both French and Everts denied that any such conversation took place. The defendant Fred French testified:

"On the 10th of October there was a fire set here by Mr. Crosby. I hired him to plow by the acre. He did not have any other employment whatever. He had his own team, plow, boarded himself, and plowed at so much per acre. I never directly or indirectly authorized him to set this fire. At my solicitation, he plowed this fire-break. This was along the field north of the track,—the field he was to plow, and afterwards did plow. The fire-break was a part of what he had to do. When he went up there,— think it was about 9 o'clock a. m.,— I told him I would like to have him plow a fire-break around this field. I told him he need not burn it off; when I got ready to burn it off, I would go out and attend to it myself. I said I would take some men with me, and place them around the field. I had no idea he was going to set it afire. I first knew it was after having finished my dinner, and went to the window, saw smoke, and saw the smoke coming from the direction where the fire was set. * * * It was my intention to burn the stubble; I was to use my own discretion and take my own precautions. Crosby might have had some interest in having the stubble burned. He might have been able to plow a few more acres a day. * * * Crosby had been plowing two or three weeks. He had plowed and burned stubble land before. He came to me, and explained the width of the fire-break around it, and asked if I was willing he should burn it. I thought the fire-break was sufficient, and I told him he could burn it. He got my consent to burn the piece south of the track. He burned the piece north of the track against my express-intentions."

Henry Kuhlman, who had two barns burned by this fire, testified:

"I saw and talked with Mr. French about the time of the fire. I asked him if he knew who started the fire, and he said 'No,' and I told him I got to find it out, anyhow. He said I should not make any trouble. He said he was going to make it all right with me. He said probably the man what set the fire was not worth anything; so it would not do me any good. French told me he would make it all right with me."

Defendants moved to strike out this testimony as to what French said, on the ground that it was incompetent, irrelevant, and immaterial. Motion sustained. Exception noted.

The ruling of the court in striking out this testimony is assigned as error. Unexplained, the evidence stricken out indicates a desire on the part of the defendant French that the witness, whose property had been destroyed by the same fire as that which burnt the plaintiff's hay, should refrain from investigating as to the responsible author of the fire, and a promise to pay the witness for his loss. The inference to be drawn from such desire and promise, and whether their origin and motive may not have been his consciousness that he himself directed the setting of the fire, were questions for the jury. The evidence was therefore competent and material as tending to show an implied admission of responsibility for the fire by the defendant, and as affecting his credibility. Its weight was for the jury, and unexplained, as it was, its probative force was more than nominal. Its rejection, therefore, was reversible error, unless upon the whole evidence in the case, including that stricken out, it appears as a matter of law that Crosby was an independent contractor in the premises.

We have then the pivotal question on this appeal: Does the evidence, including that stricken out, show, as a matter of law, that the defendant Crosby was an independent contractor, so as to exclude this case from the doctrine of respondeat superior? We answer in the negative.

The evidence makes the question one which should have been submitted to the jury, with proper instructions. The decisive test "in determining whether the doctrine of respondeat superior applies is whether the defendant had, under the contract of employment, the right to control in the given particular the conduct of the person doing the wrong." Rait v. New England, 66 Minn. 76; 68 N. W. 729; Gahagan v. Aermotor, 67 Minn. 252, 69 N. W. 914. It may be fairly inferred from the evidence in this case that the burning of the stubble on the field to be plowed is a reasonable and desirable work of preparation of the land for the plow, and that, as to the land, the plowing of which was the subject-matter of Crosby's contract, the stubble was to be burned off before it was plowed. Such being the case, the necessity or propriety of the landowner retaining the direction and control of Crosby in the execution of the work would be the

same whether he was to be paid by the acre or by the day or week. Hence the mere fact that he was to be paid for the services of himself, team, and tools by the acre, and not by the day, is not of controlling significance. But the question is, was he, in the execution of his contract, including the burning of the stubble, subject to the control and direction of French, the agent in possession and management of the farm?

Conceding that the burden of proof on this question was upon the plaintiff, we are to inquire whether the evidence was such that he was entitled to have the jury pass on the question. It is undisputed that French, the agent, did direct Crosby to leave his unfinished plowing on the south side of the railway track, and go to the north side, and there plow a fire-break, preparatory to the burning of the stubble; and there was evidence tending to show that shortly before giving this direction he stated to a third party that he was going to get Crosby to plow the fire-break, and then burn the stubble, and that he went for Crosby, who came and plowed the fire-break, set the fire, and then went back to his plowing; also, that after the fire he stated that he did not know who set it, and tried to dissuade a party injured by the fire from trying to find out who set it, promising to make matters right with him. It is true that he testified that he told Crosby not to set the fire, and that there is no direct contradiction of this evidence, and that in this respect he is mildly corroborated by Crosby, who thinks he so told him. But the acts and admissions of French, direct and indirect, as disclosed by the evidence, made his credibility a question for the jury.

It is unnecessary to repeat the evidence, or further comment upon it. It is manifest from a reading of the evidence, including that stricken out, that it made a prima facie case for the jury to pass upon, and that the order appealed from must be reversed, and a new trial granted.

So ordered.